**OREGON DEPARTMENT OF HUMAN RESOURCES, Petitioner,**

v.

**DEPARTMENT OF HEALTH & HUMAN SERVICES, Respondent.**

No. 82–7493.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 5, 1983.

Decided Aug. 31, 1983.

Karen Green, Asst. Atty. Gen., of Oregon, Karen Frohnmayer, Salem, Or., for petitioner.

P.K. Abraham, Seattle, Wash., for respondent.

Before SNEED, KENNEDY, and FARRIS, Circuit Judges.

SNEED, Circuit Judge:

The Oregon Department of Human Resources seeks review of a Department of Health and Human Services decision to disallow Oregon's claim for federal financial participation in certain administrative costs connected with the Oregon Aid to Families with Dependent Children-Foster Care program. The DHHS moved to dismiss, contending that this appeal is not properly before us, because we lack jurisdiction to review a claim disallowance. Oregon. opposes the motion, arguing that the DHHS erred in referring to the claim as a disallowance, and that this is really a plan noncompliance dispute, for which there is review by the Court of Appeals.[1] We hold that we must defer to the DHHS classification of Oregon's claim as a disallowance, and dismiss the appeal for lack of jurisdiction.

## I.

## FACTS

Oregon submitted to the DHHS an amendment of its Social Security Act cost allocation program, transferring certain administrative costs from its Title XX (discretionary social services) to its Title IV–A (AFDC) program.[2] The purpose of the transfer was to obtain federal financial participation in the payment of Oregon's Children's Services Division staff, since federal funds are more freely available under Title IV–A than under Title XX.

The DHHS approved the transfer on October 24, 1980, and Oregon submitted a $1,715,246 claim for the transferred administrative costs for the period from July 1,

---

[1.] Oregon also argues, from its interpretation of the Social Security Act, that the DHHS should have granted the claim for federal financial participation, and that the DHHS is estopped from denying the Oregon claim. We do not reach these issues, however, since we hold below that we do not have jurisdiction over this case.

[2.] Congress established several programs under the Social Security Act which are funded jointly by the federal government and the states. Among these are Title XX, 42 U.S.C. §§ 1397–1397f, and Title IV–A, id. §§ 601–615. States participating in these programs must comply with certain federal requirements in order to

qualify for federal funds. Section 408 of the Act, id. § 608, requires states to submit for DHHS approval a plan describing how they will provide services authorized by the Act, and 45 C.F.R. § 205.150 obliges states to include as part of their plan a "cost allocation plan," to detail the methods and procedures by which the states allocate and charge the costs of the jointly funded programs.

The amendment to the Oregon AFDC-Foster Care cost allocation program at issue in the present case requested the allocation to Title IV–A of the costs of case assessment, service plan development, direct contact with courts and parents, child placement, and staff supervision.

1979 to September 30, 1980.[3] In January, 1981, however, the DHHS informed Oregon that it had decided to disapprove the transfers, and confirmed this decision in an Interpretation of the Social Security Act, dated June 24, 1981. The claim was then formally disallowed on July 16, 1981.

Oregon, along with two other states, sought review of this decision in the DHHS Departmental Grant Appeals Board. The Board affirmed the Agency's Interpretation that 42 U.S.C. § 603(a)(3) prohibits federal financial participation in the transferred administrative costs. Dec. No. 337 (June 30, 1982). The Board also stated that "pure" AFDC-Foster Care administrative costs could be eligible for federal funds, and allowed the states to make claims for such costs. Oregon appeals.

## II.

### APPELLATE JURISDICTION

When the DHHS rejects a state plan for federal financial participation in a state welfare program as not being in compliance with the Social Security Act, see 42 U.S.C. § 1396c, there is review by the Court of Appeals of the DHHS decision under id. § 1316(a)(3). There is no comparable express provision for judicial review of a DHHS disallowance of a state claim. However, we held in County of Alameda v. Weinberger, 520 F.2d 344 (9th Cir.1975), that although no direct Court of Appeals review of a claim disallowance is available, the district court has jurisdiction to review a disallowance under the Administrative Procedure Act.

In the present case, the DHHS classified Oregon's claim as a disallowance, rather than as a plan noncompliance dispute. See Department Grant Appeals Board Dec. No.

337, at 1. Thus, if the DHHS classification is followed, jurisdiction to review the Board's decision is in the district court, not here.

■ We ordinarily defer to an agency's interpretation of a statute or regulation when it is consistent with the intent of Congress in enacting the relevant statutes and is supported by substantial evidence. See Loma Linda University v. Schweiker, 705 F.2d 1123, 1126 (9th Cir.1983); see also Arizona Department of Public Welfare v. Department of Health, Education and Welfare, 449 F.2d 456, 470, 473 & n. 24 (9th Cir.1971), cert. denied, 405 U.S. 919, 92 S.Ct. 945, 30 L.Ed.2d 789 (1972); 42 U.S.C. § 1316(a)(4).

Oregon argues, however, that we should develop an exception to this practice, and, by evaluating a series of factors, determine de novo whether Oregon's claim is a disallowance or a plan noncompliance dispute.

Oregon, in making this argument, relies principally on the approach of the Third Circuit. See New Jersey v. Department of Health and Human Services, 670 F.2d 1262, 1272 (3d Cir.1981); see also New Jersey v. Department of Health and Human Services, 670 F.2d 1284 (3d Cir.), cert. denied, 459 U.S. 824, 103 S.Ct. 56, 74 L.Ed.2d 60 (1982); New Jersey v. Department of Health and Human Services, 670 F.2d 1300 (3d Cir.1982). Other courts have also evaluated this type of DHHS classification by means of a "functional" analysis, but have accorded a certain amount of weight to the agency's decision. See, e.g., Georgia Department of Medical Assistance v. Department of Health and Human Services, 708 F.2d 627, 629–30 (11th Cir.1983); Massachusetts v. Departmental Grant Appeals Board, 698 F.2d 22, 29–30 (1st Cir.1983).[4] In con-

---

3. Oregon makes no claim here for federal financial participation after September 30, 1980, since the AFDC-Foster Care cost allocation program was transferred as of October 1, 1980 to Title IV–E, 42 U.S.C. §§ 670–676, which resolves the question of statutory construction underlying this appeal.

4. The functional analysis is based on an evaluation of a series of factors, to help the court to determine whether the claim is functionally more similar to a noncompliance dispute or to

a disallowance. For example, the First Circuit examines three criteria:

> First, we consider whether the matter might have fit comfortably within the statutory language of section 1396c as a determination of noncompliance, if the Secretary had chosen that route. Second, we ask whether it is of such a character, by reason of its generality and importance, as to point towards inclusion under the compliance rather than the disallowance rubric. And, last, we look to the Secretary's chosen procedures and la-

trast the Seventh Circuit eschews the functional approach and draws a "clean line," holding that it will defer to the agency's determination of the nature of a claim, except, presumably, if that determination contravenes the scheme of judicial review created by the Social Security Act or is not supported by substantial evidence. *Illinois Department of Public Aid v. Schweiker*, 707 F.2d 273, 278–79 (7th Cir.1983).

The persuasiveness of the *New Jersey, Georgia,* and *Massachusetts* opinions is weakened by the fact that none of the circuits in which these cases arose has decided whether district court review of a claim disallowance is available. *See New Jersey*, 670 F.2d at 1290 n. 11; *Georgia Department of Medical Assistance*, 708 F.2d at 630; and *Massachusetts*, 698 F.2d at 26. In the absence of such a decision, full deference to the DHHS would vest it with the exclusive power to preclude judicial review of its decisions characterizing claims as disallowances. District court review is available here, of course, *see County of Alameda v. Weinberger*, 520 F.2d at 349, and in the Seventh Circuit, *see Illinois Department of Public Aid*, 707 F.2d at 276–77 (following *County of Alameda v. Weinberger*).[5]

We therefore decline to follow the functional approach. Not only does it represent an unnecessary departure in this circuit from our due deference practice, but it also wastes judicial, as well as state and federal, resources. It is time-consuming, and creates uncertainty about which court has jurisdiction to review a claim, forcing a state to file for review of a DHHS decision in both the district and appellate courts. *Id.* at 277–79.

▮ In sum, we agree with the *Illinois* court, and defer to the DHHS decision to classify its denial of Oregon's claim as a disallowance. We acknowledge, however,

that the *Illinois* approach has drawbacks. For example, the DHHS, by a "claim disallowance" characterization, could determine that the district court would take jurisdiction over an appeal of a Board decision, and in the cases where a complete record was already developed during the agency proceedings, an unnecessary tier of judicial review of a DHHS decision would be added. But, as the *Illinois* court notes, these are not insuperable problems. The DHHS has a strong incentive to classify important claims as noncompliance disputes, given that the DHHS litigation budget is limited. Also, the DHHS might be estopped from later reclassifying a claim as a disallowance, and, in any event, the Secretary has great bargaining power, including the ability to shut off all federal funds, when a difference is characterized as a noncompliance dispute. *Id.* at 278–79.

Approached this way the question before us thus becomes whether the classification at issue here is supported by substantial evidence.[6] We conclude that it is. First, Oregon's cost transfer request did not involve a new benefit plan or affect Oregon's entire program, but sought to reallocate costs within an existing plan. *Cf. New Jersey v. Department of Health and Human Services*, 670 F.2d at 1303. Second, the transfer request covered a discrete, past period, and did not represent a continuing reallocation of Oregon's AFDC costs. *See New Jersey v. Department of Health and Human Services*, 670 F.2d at 1269. Third, the disallowance originated in connection with a routine audit of Oregon's claims. *See Massachusetts v. Departmental Grant Appeals Board*, 698 F.2d at 25–26. Finally, and least important, the Oregon claim was for a comparatively small sum. *Cf. id.* ($5.1 million) (disallowance); *State Department*

---

bel—not as definitive but as entitled to some respect.
*Massachusetts*, 698 F.2d at 27.

**5.** The DHHS conceded at oral argument that district court review of a claim disallowance is available. Other courts allowing district court jurisdiction over a claim disallowance include *Michigan Department of Social Services v. Schweiker*, 563 F.Supp. 797 (W.D.Mich.1983);

*Colorado Department of Social Services v. Department of Health and Human Services*, 558 F.Supp. 337, 348 (D.Colo.1983); and *Connecticut Department of Income Maintenance v. Schweiker*, 557 F.Supp. 1077, 1079 (D.Conn. 1983).

**6.** Oregon does not contend that the classification is contrary to the intent of Congress in enacting the Social Security Act.

*of Public Welfare v. Califano,* 556 F.2d 326 (5th Cir.1977), *cert. denied,* 439 U.S. 818, 99 S.Ct. 78, 58 L.Ed.2d 108 (1978) ($92 million) (noncompliance). Therefore, we lack jurisdiction.

DISMISSED.